**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DR. ARASH EMAMI as THEODORE C.'s attorney-in-fact,<br>*Plaintiff*,<br>v.<br>AETNA LIFE INSURANCE COMPANY and SYMRISE, INC.,<br>*Defendants*. | Civil No.: 22-cv-6115 (KSH) (LDW)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

Plaintiff Dr. Arash Emami initiated this action as attorney-in-fact for his medical practice's patient, "Theodore C.," to recover unpaid benefits from defendants Aetna Life Insurance Company ("Aetna") and Symrise, Inc. ("Symrise," with Aetna, "defendants") under § 502(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Presently before the Court is defendants' motion (D.E. 7) to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the motion will be granted.

## II. Factual Background

The complaint alleges as follows. (D.E. 1, Compl.) On April 2, 2018, Theodore C. underwent back surgery at St. Joseph's Regional Medical Center in Paterson, New Jersey. (Compl. ¶¶ 11-13, Ex. B.) The surgery was performed by Drs. Kumar Sinha and Ki Soo Hwang, both of whom are affiliated with a medical practice called University Spine Center ("USC"). (*Id.* ¶ 12.) Dr. Emami is USC's chief executive officer. (*Id.* ¶ 4.)

At the time of the surgery, Theodore C. had health benefits through a self-funded plan sponsored by Symrise, his spouse's employer (the "Plan"). (*Id.* ¶¶ 9-10, Ex. A.) Aetna, an out-of-network provider with USC, served as the Plan's claims administrator. (*Id.* ¶¶ 10, 14, Ex. C.)

Following Theodore C.'s surgery, USC submitted a bill to Aetna for reimbursement in the amount of $125,980.00. (*Id.* ¶ 16, Ex. E.) On May 4, 2018, Aetna denied the claim on grounds that the surgery was not medically necessary, an exception to out-of-network reimbursement under the Plan. (*Id.* ¶¶ 17-18, Ex. C; *see* D.E. 7-3, Plan at 68.) USC filed several unsuccessful appeals, but Aetna's denial was upheld. (Compl. ¶¶ 19-26, Exs. G, H, I.)

**III. Procedural History**

Dr. Emami's efforts to obtain reimbursement began five months before he filed this lawsuit on October 17, 2022. (D.E. 1.) On May 5, 2022, USC sued defendants in New Jersey state court asserting contract and quasi-contract claims. (D.E. 7-1, Mov. Br. at 6, n. 3.) On June 3, 2022, defendants removed the case to federal court and moved to dismiss the state law claims as preempted by ERISA. *See Univ. Spine Ctr. v. Aetna Life Ins. Co.*, 22-cv-3434 (JMV) (JBC) at D.E. 1, 5. USC responded by filing an amended complaint seeking recovery of benefits under ERISA § 502(a)(1), which defendants again moved to dismiss on various grounds, including that New Jersey law precludes anyone other than individuals and qualified banks from acting as attorneys-in-fact. *Id.* at D.E. 6, 9. In response, USC withdrew its amended complaint without prejudice, and the case was closed on August 23, 2022. *Id.* at 10, 11.

The same dispute now resurfaces in the instant lawsuit, but with Dr. Emami (not USC) acting as Theodore C.'s attorney-in-fact. (*See* Compl. ¶¶ 4, 40.) Defendants have moved to dismiss Dr. Emami's complaint on dual grounds: *first*, he lacks standing to assert a claim for benefits under ERISA; and *second*, even if he has standing, the complaint fails to state a claim for

relief because the basis upon which Aetna denied the claim was correct. (Mov. Br. at 2-3, 9-19.) Dr. Emami opposes defendants' motion and contends that each of their arguments is "unsupported by the law, facts, and equity." (D.E. 15, Opp. Br. at 2.)

**IV. Standard of Review**

Fed. R. Civ. P. 12(b)(6) requires the Court to accept as true all allegations in the complaint, as well as all reasonable inferences that can be drawn therefrom.[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint must be viewed in the light most favorable to the plaintiff, *see Phillips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008), but the plaintiff must "plead more than the possibility of relief," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court will thus "disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

**V. Discussion**

**A. ERISA Standing**

ERISA Section 502(a) provides that a "participant" or "beneficiary" may bring a civil action to, *inter alia*, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Participants" are limited to employees (current or former) eligible to

---

[1] Typically, "Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n. 3 (3d Cir. 2015). However, the Third Circuit treats statutory standing under ERISA as non-jurisdictional. *See id.* Accordingly, defendants' motion was properly filed under Rule 12(b)(6).

receive benefits under a covered plan, and "beneficiaries" are persons designated by a participant to receive plan benefits. 29 U.S.C. §§ 1002(7), (8).

Although health care providers fall into neither category, "a valid assignment of benefits by a plan participant or beneficiary transfers to such a provider both the insured's right to payment under a plan and his right to sue for that payment." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449-50 (3d Cir. 2018) (citing *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372). Such "derivative standing" is foreclosed, however, if the applicable plan prohibits assignments through an unambiguous anti-assignment clause. *See id.* at 453 (holding that anti-assignment clauses in ERISA plans are generally enforceable); *accord Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 64 (3d Cir. 2019) (enforcing anti-assignment provision that "unambiguously prohibits assignment of [patient's] right to benefit payments").

Dr. Emami does not dispute that the Plan contains an unambiguous anti-assignment clause.[2] Instead, he contends that he has standing to sue under ERISA Section 502(a) because Theodore C. executed a valid power of attorney. (*See* Opp. Br. at 4 (arguing that "[a]n anti-

---

[2] The anti-assignment clause provides as follows:

> When you see a network provider they will usually bill us directly. When you see an out of network provider, we may choose to pay you or to pay the provider directly. Unless we have agreed to do so in writing and to the extent allowed by law, *we will not accept an assignment to an out-of-network provider or facility under this plan.* This may include:
> 
> - The benefits due
> - The right to receive payments or
> - Any claim you make for damages resulting from a breach, or alleged breach, of the terms of this plan.

(Plan at 89 (emphasis added).)

assignment clause in a Plan does not impact a valid power of attorney").)[3] Dr. Emami relies primarily on *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018), where the Third Circuit joined its sister circuits in holding that unambiguous anti-assignment clauses in ERISA plans are valid and enforceable. Notably, the court reasoned in dicta that a patient subject to a valid anti-assignment clause could nonetheless "confer on his agent the authority to assert [a claim for benefits] on his behalf" by granting the agent a valid power of attorney. *Id.* at 455. In so reasoning, the court recognized the key difference between an assignment and a power of attorney: while an assignment "purports to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf," a power of attorney "does not transfer an ownership interest in the claim . . . but simply confers on the agent the authority to act on behalf of the principal." *Id.* at 454-55 (internal citations and quotations omitted). However, the court did not address whether the power of attorney at issue conveyed standing, as the appellant had waived its arguments relating to the power of attorney by failing to brief them on appeal.

Two years later, in *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218 (3d Cir. 2020), the Third Circuit again addressed the issue in dicta. There, the court was analyzing an issue distinct from those present in *American Orthopedic*—that is, under what circumstances ERISA Section 514(a) preempts an out-of-network provider from pursuing common law breach of

[3] Dr. Emami raised this argument before in *Emami v. Cmty. Ins. Co.*, 2021 WL 4150254 (D.N.J. Sept. 13, 2021) (Salas, J.), another case where he sought unpaid benefits as a patient's attorney-in-fact. There the district court recognized that "whether a physician can get around an anti-assignment clause by obtaining a power of attorney from his or her patient" is "an open question" in the Third Circuit. *Id.* at *2. Ultimately, the complaint was dismissed on sufficiency grounds without a specific holding on the power of attorney issue.

contract, promissory estoppel, and unjust enrichment claims. The court began its opinion by discussing recent developments in healthcare law, including its rulings in *American Orthopedic*:

> [A]s a matter of federal common law, we recently joined our sister circuits in holding that anti-assignment provisions, like other unambiguous terms in a contract, are enforceable. **While we left open the possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf, for most out-of-network providers, the rising prevalence of anti-assignment provisions signals the proverbial end of the road for relief under section 502(a).** The anti-assignment provision in [the patient's] plan is emblematic of this trend.

*Id.* at 228-29 (internal citations and quotations omitted) (emphasis added).

In the wake of *American Orthopedic* and *Plastic Surgery*, district courts have recognized that a valid power of attorney can, under the appropriate circumstances, trump an unambiguous anti-assignment clause in an ERISA plan. *See, e.g.*, *Abramson v. Aetna Life Ins. Co.*, 2023 WL 3199198, at *8 (D.N.J. May 2, 2023) (Martinotti, J.) (denying motion to dismiss on standing grounds where physician brought claim on behalf of patient through duly-authorized power of attorney and the complaint stated the amount of the patient's debt); *Atl. Neurosurgical Specialists P.A. v. United Healthcare Grp. Inc.*, 2022 WL 970317, at *8 (D.N.J. Mar. 31, 2022) (McNulty, J.) (individual doctors had standing to sue as patients' attorneys-in-fact where complaint alleged they were proceeding under powers of attorney and stated specific dollar amount for which each patient was responsible); *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, 2021 WL 3661326, at *5 (D.N.J. Aug. 18, 2021) (Vazquez, J.) (rejecting defendants' standing arguments where plaintiff-physicians asserted claims as attorneys-in-fact for patients and the complaint "set[] forth the amount of money for which the patient was responsible to pay after Defendants' payments"); *but see Lipani v. Aetna Life Ins. Co.*, 2023 WL 3092197, at *7 (D.N.J. Apr. 26, 2023) (Quraishi, J.) (granting motion to dismiss for lack of standing where complaint sought to enforce physician's rights, rather than the rights of his patient, and there was no allegation that the patient

suffered any harm); *Tamburrino v. UnitedHealth Grp. Inc.*, 2022 WL 1213467, at *4 (D.N.J. Apr. 25, 2022) (Wigenton, J.) (plaintiff-physician lacked ERISA standing where purported power of attorney allowed physician "to pursue B.W.'s claims as if they were his own, rather than on B.W.'s behalf" and was therefore an assignment of benefits); *O'Brien v. Aetna, Inc.*, 2021 WL 689113, at *3 (D.N.J. Feb. 23, 2021) (Kugler, J.) (attorneys-in-fact lacked standing where they were litigating "on their own behalf and for their own benefit," rather than for the benefit of their patients).

The parties sharply dispute whether *American Orthopedic* and its progeny support Dr. Emami's standing as Theodore C.'s attorney-in-fact. However, the Court need not wade into the intricacies of the parties' arguments because Dr. Emami's standing argument fails at the first step of the inquiry—he has not pled or otherwise provided the Court with evidence that Theodore C.'s power of attorney is sufficient to confer standing under New Jersey law.

The sufficiency of a power of attorney is governed by the New Jersey Revised Durable Power of Attorney Act, N.J.S.A. 46:2B-1, *et seq.* ("RDPAA"), which provides that "[a] power of attorney must be in writing, duly signed and acknowledged in the manner set forth in [N.J.S.A.] 46:14-2.1." N.J.S.A. 46:2B-8.9. In turn, N.J.S.A. 46:14-2.1 requires the power of attorney's "maker" to "appear before an officer . . . and acknowledge that it was executed as the maker's own act." N.J.S.A. 46:14-2.1(a). To "prove" the power of attorney, a witness must similarly "appear before an officer . . . and swear that he or she witnessed the maker of the instrument execute the instrument as the maker's own act." N.J.S.A. 46:14-2.1(b). Moreover, the officer must sign a certificate that includes several details, such as the officer's name and title, the date of execution, whether the maker and witness appeared personally before the officer, and whether the officer was satisfied that "the person who made the acknowledgement or proof was the maker of or the witness to the instrument." N.J.S.A. 46:14-2.1(c).

Dr. Emami's complaint generally alleges that Theodore C. signed a power of attorney (*see* Compl. ¶¶ 4, 40) but does not include any further details regarding the document or its execution. Moreover, although 11 exhibits are attached to the complaint, they do not include Theodore C.'s power of attorney. (*See generally* D.E. 1.) As defendants correctly point out, courts have dismissed claims for benefits under ERISA Section 502(a) where the plaintiff failed to plead the statutory formalities of a valid power of attorney. *See, e.g.*, *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, 2022 WL 3500416, at *5 (D.N.J. Aug. 18, 2022) (Martinotti, J.) (dismissing claims that practitioner asserted as attorney-in-fact for patients where complaint "fail[ed] to sufficiently allege facts indicating a valid power of attorney").

However, Theodore C.'s power of attorney is attached to his opposition brief. (*See* D.E. 15-1, POA.) Although it is axiomatic that a plaintiff cannot amend or supplement a complaint through motion to dismiss briefing, the Court may consider documents outside the pleadings on a Rule 12(b)(6) motion so long as they are integral to or explicitly relied upon in the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also J by Sorotzkin v. Abaline Paper Prod., Inc.*, 2021 WL 2177547, at *3 n. 4 (D.N.J. May 27, 2021) (Cecchi, J.) (considering power of attorney on motion to dismiss because it was "integral" to plaintiffs' claim for ERISA benefits). Dr. Emami's complaint expressly references and relies upon Theodore C.'s power of attorney, and so the Court will consider it.

The offered power of attorney is in writing, dated October 11, 2022, and, though redacted, appears to be signed by Theodore C. (POA at 3.) It is also notarized by a New Jersey notary public, who certified that (i) Theodore C. "personally appeared" before her on October 11, 2022 in Passaic County; and (ii) she was "satisfied that [Theodore C.] . . . was the maker of . . . the instrument." (*Id.*) As such, the document meets the fundamental requirements set forth in N.J.S.A.

46:2B-8.9. However, the power of attorney lacks a notarized signature of an attesting witness, which is required to "prove" the document under N.J.S.A. 46:14-2.1(b).[4] *See J by Sorotzkin*, 2021 WL 2177547, at *3 (granting motion to dismiss for lack of standing where proffered power of attorney did not include notarized signature of witness); *accord Am. Orthopedic & Sports Med.*, 890 F.3d at 454, n. 9 (recognizing that appellant's power of attorney was deficient under New Jersey law, specifically N.J.S.A. 46:14-2.1(b), which requires "that there be at least one witness" to a power of attorney).

In their reply brief, defendants argue that several provisions in Theodore C.'s power of attorney are defective under New Jersey law, which on their face are persuasive. (D.E. 18, Reply Br. at 4-5.) For example, defendants take issue with Theodore C.'s power of attorney insofar as it purports to appoint both Dr. Emami *and* USC as attorneys-in-fact.[5] The RDPAA defines "power of attorney" as "a written instrument by which an individual known as the principal authorizes another *individual or individuals or a qualified bank* . . . known as the attorney in fact to perform specified acts on behalf of the principal as the principal's agent." N.J.S.A. 46:2B-8.2(a) (emphasis added). Courts in this district have consistently held that medical practices are not permitted to act as attorneys in fact because they are neither "individuals" nor "qualified banks." *See Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, 2020 WL 1983693, at *8 (D.N.J. Apr. 27, 2020) (Vasquez, J.) (finding that powers of attorney could not convey medical practices

[4] Dr. Emami appears to argue that the individual who notarized Theodore C.'s power of attorney can serve as both the "officer" and the "witness." (*See* Opp. Br. at 3-4.) However, that argument is belied by the plain language of the RDPAA, which provides that "*a subscribing witness shall appear before an officer* . . . and swear that he or she witnessed the maker" execute the power of attorney. N.J.S.A. 46:14-2.1(b) (emphasis added).

[5] The power of attorney appoints two "Parties" to serve as Theodore C.'s attorneys-in-fact: (i) Dr. Emami of USC; and (ii) Dr. Emami of USC *on behalf of* USC. (POA at 1.)

standing to assert claims on patient's behalf because "medical practices cannot act as attorneys-in-fact under the RDPAA"); *accord Atl. Neurosurgical Specialists P.A*, 2021 WL 3124313, at *9. Moreover, defendants' argument that Theodore C.'s power of attorney improperly grants the attorneys-in-fact the "power to act jointly and/or severally" (POA at 1) is well taken, as the RDPAA allows multiple attorneys-in-fact to act *jointly or severally*, but not both. *See* N.J.S.A. 46:2B-8.7(b)-(d).

Because Dr. Emami has not demonstrated that Theodore C.'s power of attorney is sufficient to confer standing under New Jersey law, the complaint must be dismissed.[6] Defendants seek dismissal with prejudice (*see* Mov. Br. at 20), which will not be granted. But the Court duly notes that to date Dr. Emami has filed three complaints—two in USC's name and one in his own—seeking reimbursement for Theodore C.'s surgery, and he has yet to successfully meet pleading requirements.

**VI. Conclusion**

For the foregoing reasons, defendants' motion to dismiss (D.E. 7) is granted. An appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: August 22, 2023

[6] In light of the foregoing, the Court need not reach defendants' remaining arguments in favor of dismissal.